Frank E. Johnson, Plaintiff-Appellee, v. Henry A. Fischer, et al., and Prudential Insurance Company of America, Defendants-Appellants.

Gen. No. 68–150.

Second District.

May 15, 1969.

William Elden, of Chicago, for appellants.

Norman H. Racine, of Sycamore, for appellee.

PRESIDING JUSTICE MORAN delivered the opinion of the court.

One of the defendants, William Elden, appeals from an order of the trial court which denied his post-trial motion tiff's invoice dated July 1, 1965, in the sum of $1,940.49 against him in favor of the plaintiff, Frank E. Johnson.

Two questions are presented. The first question is, may an owner of a farm be liable as an undisclosed principal for improvements made to the farm but ordered by a tenant, when the recorder's office discloses him to be the owner and the contractor eventually becomes cognizant that he has been negotiating with the tenant? The second query is, may an agent and his undisclosed principal be joined in the same action?

One Hove, an employee of the plaintiff who is a general contractor, testified that in February of 1965, he received a telephone call from the defendant-tenant, Jennie Long, who was living in the main dwelling on the farm. Thereafter, he called upon her at the farm and, during this visit, she requested that repairs be done to the tenant house and further stated that there would be other jobs that had to be done on the farm. As the work progressed, the plaintiff's employees did work on the main house, the tenant house and the barn.

By the first of June of 1965, all of the work was completed. In the fall of 1965, since the plaintiff remained unpaid, Hove contacted Jennie Long and was told that insurance proceeds would pay the bill. No dissatisfaction was expressed with the work and, in December of 1965, while preparing a mechanic's lien, the plaintiff discovered that title to the premises in question was in the name of the defendant and Elizabeth Elden.

The plaintiff testified that in the spring of 1966 he called the office of the defendant, inquired about payment of the bill, and the defendant told him that he was waiting for an insurance company to pay a claim before paying the plaintiff's bill.

The defendant, called adversely, testified that Jennie Long was a tenant of one of his buildings; that between November of 1964 and September of 1966 he visited the farm either once a month or every second month and saw to the physical existence of things; that he had a policy of insurance with Addison's Farmers Mutual Insurance Company from the time that he owned the farm; and that he had filed a verified amended complaint on October 11, 1966, on his own behalf, against that company for damage to the farm improvements in which he alleged that the company's agent "told the plaintiff to have it repaired and send him the bill" and that "in reliance on this, plaintiff retained a contractor to make the necessary repairs." He further testified that he had no knowledge of any work having been done on the farm; that he had a manager there whose duty it was to take care of the farm and he did not recall the manager telling him that there had been work done on the farm. Defendant identified a letter from the Addison Farmers Mutual Insurance Company returning to him the plaintiff's invoice dated July 1, 1965, in the sum of $1,940.49 and denying coverage under its storm damage policy. A letter, from the defendant to the Addison Farmers Mutual Insurance Company, dated February 9, 1966 stated: "We only undertook this work after we were instructed so by Mr. Dickson." (Mr. Dickson being an agent for Addison Farmers Mutual Insurance Company.)

The defendant, thereafter testifying on his own behalf, stated that in November of 1964 he purchased the farm in question and subsequently leased the house to Jennie Long on a month-to-month basis; that in December of 1965 or early 1966 he received a letter from the plaintiff's attorney concerning a sum due to the plaintiff; that he investigated the claim and was informed that the work was necessary because of storm damage to the premises and that the agent for the insurance company had authorized the work; that subsequently, the company

denied coverage and he filed a complaint against the company, which was dismissed; that this dismissal had been affirmed by the Appellate Court and, at that time, was pending in the Supreme Court of the State of Illinois. He denied that Jennie Long was his agent and testified that the only relationship between himself and Mrs. Long was that of landlord and tenant. There was a manager on the farm who was the only one who had any authority to make any contracts in connection with the farm.

The cause came on for trial upon an amended complaint setting forth three counts. Count I sought to foreclose a mechanic's lien, Count II sought to recover under an oral contract with the defendant, Jennie Long, and Count III alleged an oral contract with Jennie Long as agent of the defendant, William Elden, and further alleged that the defendant, William Elden, promised to pay but has not paid the sum. The complaint prayed for judgment in the alternative against Jennie Long or William Elden.

Upon a hearing before the trial judge, without a jury, the court found in favor of the defendants as to Count I but found that the plaintiff was entitled to recover on Counts II and III against Jennie Long and William Elden. However, the plaintiff's attorney elected to take his remedy against the defendant, William Elden, under Count III.

The trial court found that the defendant ratified the act of Jennie Long as his agent. In giving his opinion, the trial judge stated that he found it difficult to understand how the defendant could visit the farm every month or two and not see the improvements such as the "new shingles, new storm doors, front and back doors, new shingled roof." The court also considered the statement made by the defendant that he would pay the bill when the insurance proceeds were received and the defendant's subsequent filing of a verified complaint in which he stated that in reliance upon an agent of his

insurance company he retained a contractor to perform the work in question.

 The trial judge who sees the witnesses and hears the evidence is in a much superior position to find the truth than is a reviewing court which has before it only the printed page. The weight to be given the testimony and the credibility of the witnesses are matters which are within the trial judge's province. Where a trial judge has heard witnesses give oral testimony, his findings will not be disturbed unless they are plainly erroneous and contrary to the manifest weight of the evidence. Village of Glencoe v. Jackson, 102 Ill App2d 65, 243 NE2d 865 (1968). The court's findings herein are supported by the record and will not be disturbed.

The defendant relies upon the case of Wing v. Lederer, 77 Ill App2d 413, 222 NE2d 535 (1966) as controlling in this case. However, in that case there was no communication or contact between the plaintiff and the alleged undisclosed principal as in the instant case. Further, in that case there was an absence of any showing that the undisclosed principal knew the work was in progress. The facts in the Wing case are inapposite to the facts in the case at bar and, therefore, the case is not controlling.

 The defendants' second contention is that an agent and his undisclosed principal may not be tried jointly but must be tried in separate actions. We do not agree with this conclusion. While there can be no joint liability between an agent and his undisclosed principal, the plaintiff may sue both as defendants. 3 Am Jur2d, Agency, § 342; 118 ALR 701. However, in such cases, the plaintiff must elect which one he shall take judgment against. In the case of Capitol Hardware Mfg. Co. v. Naponiello, 345 Ill App 272, 275, 102 NE2d 685 (1951), judgment was rendered against both the agent and the undisclosed principal. The court remanded the case to the trial court with "directions to require the plaintiff

to elect whether to take judgment against" the agent or the undisclosed principal.

Finally, defendant argues that a person may not be the tenant and the agent of a landlord. No authority is cited nor can this court find any precedent for such a proposition of law. It can imagine many situations and circumstances under which a landlord may make a tenant his agent for either limited or general purposes.

Therefore, under the facts of this case, the answer to each of the questions presented by this appeal must be in the affirmative. Consequently, the judgment of the trial court is affirmed.

Judgment affirmed.

DAVIS and SEIDENFELD, JJ., concur.